SO ORDERED.

SIGNED this 3 day of September, 2021.

_Stephani W. Humrickhouse_
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

___

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

BLAKE FAMILY PROPERTIES, LLC,    CASE NO. 15-01497-5-SWH
                                 CHAPTER 11
    DEBTOR.

ORDER ALLOWING MOTION TO ENFORCE PLAN OBLIGATIONS

The matter before the court is the Motion to Enforce Plan Obligations filed by CL45 MW Loan 1, LLC (the "Bank") (successor in interest to Yadkin Bank) on March 16, 2021. A hearing was held in Raleigh, North Carolina on April 20, 2021, after which the matter was taken under advisement. For the reasons that follow, the motion will be allowed.

BACKGROUND

On April 25, 2008, Crescent State Bank (predecessor to Yadkin Bank) extended a $750,000 loan (the "Loan") to Blake Home Builders, Inc. ("BHB, Inc"), a subsidiary of debtor Blake Family Properties, LLC. The Loan was secured by the guarantees of Thomas A. Blake and Charles E. Blake, individually (the "Guarantors"), as well as by a real estate deed of trust and assignment of rents (the "Deed of Trust") on three tracts of the debtor's property (the "Property"). The Loan was

eventually modified on June 6, 2011, for the purpose of extending the maturity date to June 2, 2014.

The debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on March 18, 2015. As successor to Crescent State Bank, Yadkin Bank filed a proof of claim on June 22, 2015, which reflected a balance due on the matured Loan of $300,704.83. The proof of claim provided that the debtor's Property served as collateral under the Loan, but that the debtor was not personally obligated under the Loan.

The debtor's chapter 11 plan was confirmed on January 20, 2016. Class 7 set out the treatment of the Yadkin Bank claim as follows:

> (1) <u>Description of Debt.</u> . . . The Debtor's real property as listed on Schedule A was the collateral used to secure Blake Home Builders, Inc.'s obligation to Crescent State Bank. On June 6, 2011, Blake Home Builders, Inc. and Crescent State Bank modified Blake Home Builders, Inc.'s obligation and provided that the existing balance of $297,128.55 would be paid over thirty-five (35) equal consecutive monthly payments of $3,031.00 beginning on July 2, 2011 with the balance due on June 2, 2014. The Debtor scheduled the obligation to Yadkin Bank and also noted the claim as disputed via a Notice of Disputed Claims [D.E. 37] filed on April 15, 2015. Yadkin Bank filed Claim 4 on June 22, 2015 alleging to be owed $300,704.83, but noted that the Debtor was not obligated on the loan between Blake Home Builders, Inc. and Yadkin Bank. Yadkin Bank also noted on Exhibit A to Claim 4 that the Debtor was not liable for the amounts owed, but the Debtor's property secured the obligation of Blake Home Builders, Inc.
>
> . . .
>
> (3) <u>Treatment.</u> The Debtor will file an objection or adversary proceeding to Yadkin Bank's Claim, as appropriate, asking that Blake Home Builders, Inc. be fully responsible for the obligation and not the Debtor. If after that objection and/or adversary proceeding is concluded the Court finds that the Debtor is obligated to Yadkin Bank in any amount, then the Debtor will pay the obligation through the proceeds of a sale of the Debtor's real property assets, which are listed on its Schedule A (the "Property").
>
> . . .
>
> **To the extent Yadkin Bank has a valid lien,** Yadkin Bank shall retain its liens with the priority thereof, as existed on the Petition Date pursuant to

> § 1129(b)(2)(A)(i)(I), until its claims are paid as outlined herein. **The Debtor will continue to market the Property and shall have eighteen (18) months from the Effective Date (the "Marketing Period") to liquidate the Property.** Upon the sale of the Property, Yadkin Bank's liens shall attach to the proceeds of such sale, and shall be paid in accordance with the Plan. **The Debtor shall keep the Property's post-Petition tax obligations current**. . . .

Dkt. 124 at 11-12 (emphasis added). The Effective Date of the confirmed plan was established as February 3, 2016, and thus the Marketing Period for the debtor's Property ended on August 3, 2017. As of the date of the hearing on the motion, two of the three parcels of the debtor's Property had not been sold. The tax records for 2018, 2019, and 2020 introduced at the hearing indicate that the debtor has not paid the property taxes on those remaining parcels for those years.

Pursuant to the confirmed plan, the debtor initiated an adversary proceeding against the Bank on January 19, 2016, with the filing of a complaint seeking to rescind and set aside the Bank's security interest in the property. Case No. 16-00007-5-SWH. The Bank filed an answer generally denying the allegations of the complaint on March 21, 2016. Prior to trial, the parties agreed to mediation of the adversary proceeding, which resulted in a mediated settlement agreement dated January 27, 2017[1] (the "Settlement Agreement"). Pursuant to the Settlement Agreement, Yadkin Bank agreed to cap its claim at $340,000, and to be paid through the receipt of one-half of the proceeds of the sale of the debtor's Property. The Settlement Agreement also provides that, upon receipt of the $340,000, the Bank is to cancel the Deed of Trust and a judgment obtained in the state court lawsuit. None of the parties sought court approval of the Settlement Agreement by this court. Additionally, the debtor did not seek to modify the confirmed plan to incorporate the terms

---

[1] The Settlement Agreement recites that its purpose is to compromise the claims set forth in the adversary proceeding and an action previously instituted in Wake County Superior Court against Charles E. Blake, Sr., Thomas A. Blake, and Blake Home Builders, Inc. The court notes that the signature of Thomas A. Blake, individually, as Manager-Member of the debtor and as a representative of Blake Home Builders, Inc., is missing from the Settlement Agreement provided to the court.

3

of the Settlement Agreement. On November 3, 2020, Yadkin's successor, the Bank, filed a transfer of claim pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, indicating that Claim No. 4 had been transferred to the Bank. Fed. R. Bankr. P. 3001(e).

The debtor has responded to the Bank's motion by asserting that this court lacks both subject matter jurisdiction over this matter and standing to bring it before the court. Furthermore, the debtor asserts that the Settlement Agreement is a fully integrated agreement, essentially replaced the confirmed plan, and is therefore the only document relevant to this dispute. The debtor contends that it has no further obligation to seek modification of the plan because the Settlement Agreement deals only with Class 7 and does not change the treatment of any other class. The debtor argues that it has fulfilled its obligations under the Settlement Agreement by remitting one-half of the net proceeds from the sale of one of the parcels of the Property to the Bank, and by continuing to market the remaining parcels. The debtor denies that it retains any further obligation to auction the Property after any specific date. Finally, in the event that the court finds that the Settlement Agreement is not the sole operative document, the debtor asserts that either the statute of limitations or the doctrine of laches bars the recovery sought by the Bank's motion.

The Bank maintains that this court has "arising under" jurisdiction over this controversy. The Bank also argues that it has standing to bring these claims based on the defaults in the payment of property taxes by the debtor, and the fact that it is the enforcement of its lien on the debtor's Property that is at issue. The Bank asserts that the Settlement Agreement and confirmed plan must be read together to form the operative documentation, and that the Settlement Agreement complements the plan and in no way excuses the debtor's noncompliance with that plan. Additionally, with respect to the debtor's statute of limitations arguments, the Bank asserts that

since the property taxes are to be paid annually, the statute of limitations has not yet expired for enforcement of the Deed of Trust for failure to pay the 2018, 2019, and 2020 taxes.

## DISCUSSION

### I. Subject Matter Jurisdiction

The debtor maintains that this court does not have subject matter jurisdiction over this controversy. Subject matter jurisdiction for this court is set forth in 28 U.S.C. § 1334(b):

> Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

Courts have defined "arising under" jurisdiction to apply to matters wherein "the cause of action or substantive right claimed is created by the Bankruptcy Code." *Harvey v. Dambowsky (In re Dambowsky)*, 526 B.R. 590, 597 (Bankr. M.D.N.C. 2015) (quoting *Burns v. Dennis (In re Southeastern Materials, Inc.)*, 467 B.R. 337, 346 n.4 (Bankr. M.D.N.C. 2012)). Courts have defined "arising in" jurisdiction to apply to matters "not based on any right expressly created by Title 11, but . . . [that] would have no existence outside of the bankruptcy," and "related to" jurisdiction to apply to matters wherein "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Valley Historic Ltd. P'ship v. Bank of NY*, 486 F.3d 831, 835-36 (4th Cir. 2007) (quoting *Bergstrom v. Dalkon Shield Claimants Trust (In re A. H. Robins Co.)*, 86 F.3d 364, 372 (4th Cir. 1996); *Pacor, Inc. v. Higgens*, 743 F.2d 984, 994 (3d Cir. 1984)). Furthermore, in the case of "related to" jurisdiction, matters brought post-confirmation must "affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan." *Valley Historic*, 486 F.3d at 836-37 (quoting *Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 167 (3d Cir. 2004)).

This controversy involves the Property of the debtor and requires a determination of whether that Property has been correctly administered pursuant to the confirmed plan. The court agrees that the motion seeks to enforce the provisions of a confirmed plan and thus arises under § 1142(b) of the Bankruptcy Code. An argument also could be made that it fits the criteria for "arising in" jurisdiction, since this case is still ongoing, and this matter would not exist without the debtor's bankruptcy. Finally, the court finds that, at least, its jurisdiction falls under the "related to" umbrella, as the court is being asked to interpret the confirmed plan and determine whether it has been correctly executed thus far.

The debtor's confirmed plan outlined the precise steps to be taken to resolve the Bank's claim, including the initiation of an adversary proceeding. In accord with those provisions, the debtor initiated an adversary proceeding to determine the validity of the Bank's claim of a security interest in its Property. Order Confirming Plan (Dkt. 124) at 11-12. The Settlement Agreement provided that the Bank did, in fact, have a valid claim against the debtor and its Property by fixing the amount of the debt owed by the debtor and stating that the Deed of Trust is to be cancelled upon full payment of that debt. In addition, according to the plan, the debtor was required to "pay the obligation through the proceeds of a sale of the Debtor's real property assets, which are listed on its Schedule A . . . . The Debtor will continue to market the Property and shall have eighteen (18) months from the Effective Date (the "Marketing Period") to liquidate the Property." Dkt. 124 at 12. The Marketing Period has passed, and the Bank's liens, as laid out in the confirmed plan, have not been satisfied. This court has jurisdiction to interpret the confirmed plan and to determine the rights of the parties thereunder.

The authority of this court to do so is recognized in 11 U.S.C. § 1142, which provides that "[t]he court may direct the debtor and any other necessary party to execute or deliver . . . and to

perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan." 11 U.S.C. § 1142(b).  Actions brought under this section are considered to "arise under" title 11 of the Bankruptcy Code.  *See, e.g., In re Polar Molecular Corp.*, 195 B.R. 548, 552 (Bankr. D. Mass. 1996) ("An action seeking 'an order requiring the debtor or other necessary party to execute the provisions of a confirmed plan is a proceeding arising under Title 11.'") (quoting *In re Harlow Properties, Inc.*, 56 B.R. 794, 797 (B.A.P. 9th Cir. 1985)).

## II. Standing

The debtor argues that even if this court does, in fact, have subject matter jurisdiction, the Bank does not have standing to bring this motion. In order to have standing in a bankruptcy proceeding, a party must have a "legally protected interest that could be affected by" that proceeding. *E.g., Hobson v. Travelstead (In re Travelstead)*, 227 B.R. 638, 650 (D. Md. 1998) (quoting *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992)). In other words, the party must have a "personal stake in the outcome of the controversy." *See Warth v. Seldin,* 422 U.S. 490, 498 (1975) (internal citation omitted). Section 1109(b) of the Bankruptcy Code provides that a creditor who is an interested party may raise, appear, and be heard on any issue in a bankruptcy case. 11 U.S.C. § 1109(b). As the holder of a lien on the debtor's Property which is the subject of the confirmed plan, the Bank is most certainly an interested party. Here, in addition to the means of satisfaction of that lien, this matter concerns tax defaults that have put the Bank's lien at risk and constitute defaults under the Deed of Trust. The lien represents the Bank's "legally protected interest" in the debtor's Property and the present controversy will directly determine whether this interest is being fully satisfied, as laid out in the controlling documents. The standing requirements are satisfied.

**III.     The Confirmed Plan, the Settlement Agreement, and the Deed of Trust are the Controlling Documents.**

With subject matter jurisdiction and standing having been well established in the instant case, the court must now determine which documents control this dispute. "Under the Bankruptcy Code, a confirmed plan of reorganization acts like a contract that is binding on … debtor and creditors alike." *First Union Commercial Corp. v. Nelson, Mullins, Riley, & Scarborough (In re Varat Enters.)*, 81 F.3d 1310, 1317 (4th Cir. 1996). Thus, such plans must be interpreted "in accordance with general contract law." *Friday Invs., LLC v. Bally Total Fitness of the Mid-Atl., Inc.*, 803 S.E.2d 233, 240 (N.C. Ct. App. 2017) ("Under well-established bankruptcy law, a chapter 11 re-organization plan is basically a court-approved contract between the debtor and its creditors."). The goal of the courts when it comes to contract interpretation is to "ascertain the purpose of the parties at the moment of [the contract's] execution." *Lane v. Scarborough*, 200 S.E.2d 622, 624 (N.C. 1973). When a contract is deemed to be free of ambiguities, its terms are a question of law, and thus, determined by the court. *Id*. This court finds that the confirmed plan is unambiguous. It must be interpreted based on its plain language and the intentions of the parties must be inferred from this language alone. *See Walton v. City of Raleigh*, 467 S.E.2d 410, 411 (N.C. 1996); *see also, e.g., Carpet Super Mart, Inc v. Benchmark Int'l Co.*, No 1:18CV398, 2020 WL 4505670, at *4 (M.D.N.C. Aug. 5, 2020) (construing *Lane* and *Walton* in context of contract interpretation). The Settlement Agreement is also a contract and is subject to the same treatment. Its provisions likewise are unambiguous, and its terms clearly state that it evidences the parties' intent to resolve and compromise the adversary proceeding.

Turning first to the confirmed plan, the Bank's treatment under the plan is clear. Dkt. 124 at 11-12 (Confirmed Plan, Part III(G)(3)). That plan expressly anticipated and provided for the debtor to bring an adversary proceeding or claims objection to determine the status of the Bank's

claim, and thus, anticipated the initiation of subsequent proceedings and additional operative documents. *Id*. The debtor chose to initiate an adversary proceeding, which led to mediation between the parties and, in turn, to the negotiation and execution of the Settlement Agreement. *Id.*; Bank's Mot. To Enforce Plan Obligations (Dkt. 209), Ex. A at 1. The debtor argues that the Settlement Agreement is the only relevant document here, but the court disagrees. The Settlement Agreement does not expressly state that it is intended to *replace* the confirmed plan, and the plan was not modified pursuant to § 1127(b) of the Bankruptcy Code. 11 U.S.C. § 1127(b). Instead, the court reads the Settlement Agreement as the product of the natural progression of events put in place and foreseen by the confirmed plan. The Settlement Agreement does not stand alone, and must be read in conjunction with the confirmed plan and Deed of Trust for implementation

The debtor does not dispute the fact that the Bank's claims have not been fully paid; instead, based on its argument that the Settlement Agreement replaces the confirmed plan's treatment of those claims, it insists that that the debtor need only apply one-half of the proceeds of any of the Property sold to the Bank's claim, with no time limitations on the sale of the Property. As noted above, the court disagrees with the "replacement" theory, though it notes that such an interpretation might have been reasonable if the Settlement Agreement had been approved as a proper modification of the confirmed plan, which expressly changed the debtor's time limitations. However, according to § 1127(b), notice, hearing, and court approval are required for post-confirmation modification of a plan. None of these procedures were undertaken in the instant case and absent proper modification, the confirmed plan remains the controlling document.

Inasmuch as the confirmed plan contemplated the adversary proceeding and its resolution, the Settlement Agreement must be read and interpreted as a supplement to, and not as a replacement for, the confirmed plan. The court sees no inconsistencies between the confirmed plan

9

and the Settlement Agreement, only a refinement and determination of three issues: 1) the amount of the debt; 2) the liability of the debtor for the debt, and 3) the continuation of the debtor's Property as security for the debt. Additionally, both the confirmed plan and the Settlement Agreement refer to the Deed of Trust as evidence of the Bank's lien on the debtor's Property, and neither the confirmed plan nor the Settlement Agreement modify the Deed of Trust, its provision or its enforcement. The Deed of Trust, therefore, informs the court's interpretations of the debtor's obligations to the Bank. As a supplement to the confirmed plan, the Settlement Agreement merely changes the amount of the claim and allows the debtor to return one half of the proceeds of the sale of the Property until the claim is satisfied. Contrary to the debtor's view, it does not give the debtor an unlimited amount of time to liquidate the Property. Rather, the Settlement Agreement is silent on the liquidation period – that time period is supplied by the confirmed plan.

## IV.  Statute of Limitations and the Doctrine of Laches

Finally, the debtor argues that even if the confirmed plan and Settlement Agreement together constitute the controlling documents in this matter, the Bank's claim for enforcement of the confirmed plan is barred by the statute of limitations or the equitable doctrine of laches. The debtor's plan was confirmed on January 20, 2016, and the 18-month Marketing Period for the debtor's Property therefore ended in August 2017. The Bank did not file its motion until March 16, 2021.

The debtor characterizes the Bank's motion as being akin to a breach of contract action arising out of the debtor's failure to liquidate the Property within the time period set out in the confirmed plan, which the debtor contends is subject to a three-year limitations period and thus has expired. In North Carolina, the statute of limitations for claims based on breaches of contracts, which in this instance could include the confirmed plan, begins to accrue on the date that "the

10

promise is broken," and contract actions must be brought within three years of the date when the contract was breached. *Spoor v. Barth*, 781 S.E.2d 627, 633 (N.C. Ct. App.) (quoting *Penley v. Penley*, 332 S.E.2d 51, 62 (N.C. 1985)), *cert. denied*, 787 S.E.2d 38 (2016). According to the debtor, this means that the Bank can no longer enforce any of the rights related to its lien on the debtor's real property as set out in the plan. The court cannot make that jump.

As an initial matter, the court notes that there is no set limitations period applicable to claims based on breach of the terms of a confirmed plan. *See, e.g., In re Richmond Health Care, Inc. v. Hilliard Dev't Corp.* 238 B.R. 857, 875-876 (Bankr. S.D. Fla. 1999) (setting out thorough discussion of the lack of a limitation period specifically applicable to claims on confirmed plans under 11 U.S.C. § 1142). Generally speaking, courts decide whether the claims asserted "have a federal or state law origin. If the rights are federal in character, the court 'borrows' a limitation period; if the rights have their origin in state law, the court must directly apply state law as the 'rule of decision.'" *Hilliard*, 238 B.R. at 871, *citing* 28 U.S.C. § 1652 (Rules of Decision Act) and *DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 159 n.13 (1983). The *Hilliard* court, having concluded that a confirmed plan is more in the nature of a federal judgment than a contract, then assessed which state statute of limitation to "borrow" in resolving competing motions for summary judgment. *Id*. at 873.

The confirmed plan is something more than "only" a contract; it is also a final judgment on the merits, with *res judicata* effect. *Covert v. LVNV Funding, LLC*, 779 F.3d 242, 246 (4th Cir. 2015); *In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996). In North Carolina, the statute of limitations applicable to actions on a judgment is ten years. N.C. Gen. Stat. § 1-47(1). That period applies to any action "[u]pon a judgment or decree of any court of the United States, or of any state or territory thereof, from the date of its entry." *Id.* The court has no doubt that it applies

11

in this context, given that the Bank's motion seeks very specifically to enforce the confirmed plan's terms. *See, e.g., Huntsville Golf Dev., Inc. v. Bank*, No. 5:13-CV-671-VEH, 2014 WL 1117640 (N.D. Ala. Mar. 19, 2014) (considering factual scenario similar to the instant case and concluding that 20-year judgment statute rather than 6-year contract statute applied to movant's effort to enforce terms of confirmed chapter 11 plan). The Bank's effort to enforce the terms of the confirmed plan is timely.

As an aside, and though it is not the subject of the Bank's motion, it also is plain that both the confirmed plan *and the Deed of Trust* require the timely payment of property taxes. The Settlement Agreement affected the Deed of Trust in only one material way; it required satisfaction of the Deed of Trust upon payment of $340,000. All other provisions, including default triggers and remedies, remained intact. With respect to that, there is no dispute that the debtor is in default on its property taxes for years 2018-2020, and the statute of limitations for unpaid ad valorem taxes in North Carolina begins to accrue when each tax becomes due. *See Martin v. Ray Lackey Enters., Inc.*, 396 S.E.2d 327, 332 (N.C. Ct. App. 1990). The limitation period for this type of claim is also three years. *Id*. The default provisions of the Deed of Trust having been triggered when the debtor failed to pay the property taxes for the year 2018, and subsequently 2019 and 2020, the Bank retains the power to proceed with foreclosure according to the "Remedies on Default" provision of the Deed of Trust as an alternative or supplemental method of enforcing its lien.

Finally, the court concludes that there is no viable laches defense here. The doctrine of laches is designed to protect defendants from plaintiffs who are attempting to gain legal advantage by unreasonably delaying the prosecution of their own claims. *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods.*, 137 S. Ct. 954, 960 (2017). The "mere passage of time is insufficient to support a finding of laches," and instead, the proponent of the doctrine's

12

application must show that the delay was "unreasonable" *and* that the delay "worked to the disadvantage, injury, or prejudice of the person seeking to invoke the doctrine." *In re Nolan*, No. 09-31456, 2012 WL 2564894, at *3 (Bankr. W.D.N.C. July 2, 2012), *quoting Irby v. Freese,* 696 S.E.2d 889, 892 (N.C. App. 2010). "Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another." *Huntsville Golf*, 2014 WL 1117640, at *13 (internal quotation and citation omitted). The "key factors in this analysis are thus (1) length of delay and (2) material prejudice to the other party." *Id.*

Here, with the debtor's plan having been confirmed in 2016 and the Marketing Period for the debtor's real Property set to end on August 3, 2017, it does appear that an action could have been brought by the Bank, or its predecessor, prior to March 16, 2021- the filing date of the instant motion. The docket reflects that the Bank filed its motion approximately four months after transfer of the Yadkin Bank claim the Bank. Dkt. 197 (Transfer of Claim), Dkt. 209 (Motion to Enforce). Moreover, and more importantly, the debtor has provided no indication that it has suffered disadvantage or injury of any kind whatsoever as a result of this delay. Lacking an "unreasonable" delay by the Bank or any prejudice at all to the debtor, the court perceives no basis upon which to invoke the equitable doctrine of laches.

## CONCLUSION

Accordingly, for the foregoing reasons, it is **ORDERED** that the Motion to Enforce Plan Obligations is **ALLOWED** with regard to the Bank's motion for specific performance of the auction requirement set out in the confirmed plan.

**END OF DOCUMENT**